IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ENGLISH BOILER & TUBE, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:12cv88–DJN |
| Glex INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Between 2003 and 2010, GLEX, Inc. ("Glex" or the "Defendant") formed four different contracts with English Boiler & Tube, Inc. ("English Boiler" or the "Plaintiff") for the sale of custom boilers. The last of these, negotiated and executed from September, 2009 to February, 2010, concerned two watertube boilers that Glex intended to use for a project in Mexico. Over the following months, English Boiler completed the boilers and delivered them to Glex, which then installed them on its Mexico site. Glex has since withheld the last $99,400 due under the contract.

In February, 2012, English Boiler filed this breach of contract action to recover the final payment. Glex moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), contending that it lacks the requisite minimum contacts with Virginia to lend this Court jurisdiction. Subject to this motion, Glex also filed an answer and counterclaims, asserting that the boilers were unable to operate continuously and reliably at the contractually specified capacity and that English Boiler made negligent misrepresentations and fraudulently induced Glex into the contract.

This matter is now before the Court by consent of the parties pursuant to 28 U.S.C. §636(c)(1) on Glex's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 6). The parties have thoroughly briefed the issues, including submission of affidavits addressing the jurisdictional facts, and the matter is now ripe for decision.[1] For the reasons set forth herein, the Court shall DENY the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

## I. BACKGROUND

Glex is a Texas corporation in the business of providing engineering, fabrication, start up, and service of custom designed packaged process equipment. (Compl. at ¶ 2.) English Boiler is a Virginia corporation in the business of designing and manufacturing heating boilers for industrial, commercial and institutional use, and providing services related thereto. (*Id.* at ¶ 1.) English Boiler's headquarters and manufacturing facility are in Henrico County, Virginia. (Aff. of Richard English ("English Aff.") at ¶ 3.) On at least four times over the past nine years, Vice-President of Glex, William Larco, telephoned Vice-President of English Boiler, John English, to initiate business. (*Id.* at ¶ 15.) These calls resulted in boiler purchase orders dated October 7, 2003; April 14, 2005; and, July 31, 2007. (*Id.*) None of these three contracts are at issue here.

In or about September 2009, Larco again called English to discuss purchasing two watertube boilers for a project that Glex had in Mexico. (English Aff. at ¶ 4.) English Boiler issued a proposal (the "Proposal") to Glex for two boilers on January 26, 2010. Glex responded on February 12, 2010 with a purchase order ("Purchase Order") for the boilers at a price of $994,000 with delivery F.O.B. Richmond. (*Id.* at ¶ 6.) That same day, Larco sent an e-mail to English identifying key "clarifications" — alterations to the Proposal (presumably included in the forthcoming Purchase Order) that Larco wanted to be sure that English Boiler accepted. (*Id.*

---

[1] The Court dispenses with oral argument, finding the written submissions adequate for the Court to render its decision.

at ¶ 7.) Indeed, Larco specified that Glex "[could] not commit" until English Boiler "confirm[ed] acceptance of these terms." (*Id.* at Ex. A.)[2] On February 15th, Larco sent a second e-mail authorizing English Boiler to proceed with design and fabrication of the boilers pursuant to the Proposal, Purchase Order and the February 12th email. (*Id.* at ¶ 8.)

Over the following months, Glex participated in the boilers' design and manufacture. Glex appointed Robert Taylor as its project manager and he visited English Boiler's facilities in Virginia twice — on February 18th to discuss the project in detail and again on April 28th to inspect construction progress. (*Id.* at ¶¶ 9–10, 12.) Larco sent an e-mail on March 3d requesting changes to the boiler controls and Glex issued change orders on July 7th and 28th. (*Id.* at ¶ 11; Compl. at ¶ 7.) Besides these exchanges, from approximately September 2009 to April 2011, Larco and Taylor were in frequent contact with English and other English Boiler officers by telephone and e-mail regarding the boilers' design, fabrication, installation, startup and repairs. (English Aff. at ¶ 13.)

English Boiler asserts that after the boilers were finished, delivered to Glex and installed at their Mexico project, Glex failed to pay $99,400 still due under the contract. (Compl. at ¶ 11.) English Boiler instituted this action on February 3, 2012 to recover the balance, asserting that Glex breached their contract by its failure to pay. (*Id.* at ¶¶ 12–13.) Glex filed a timely Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), claiming that it lacks the requisite minimum contacts with Virginia to confer jurisdiction and that assertion of such would offend traditional notions of fair play and substantial justice. (Def.'s Mem. Supp.

---

[2] English Boiler's acceptance of these terms appears to be the last act requisite to form the contract. Glex represents in contrast that "[t]he Purchase Order and Change Orders related to the Transaction were prepared and executed in Texas and subsequently transmitted to English Boiler." (Larco Aff. at ¶ 6.) This statement incorrectly implies contract formation in Texas by ignoring the specific request that English Boiler "confirm the acceptance" of additional terms transmitted by email on February 12, 2010. (English Aff. Ex. A.)

3

Def.'s Mot. Dismiss ("Def.'s Mem.") at 1–2.) Subject to this motion, Glex also filed an answer and counterclaims asserting that the boilers were unable to operate continuously and reliably at the contractually specified capacity, and that English Boiler made negligent misrepresentations and fraudulently induced Glex into the contract. (Countercl. at ¶¶ 3, 7.)

Glex appears to have no contacts with Virginia beyond its dealings with English Boiler. Glex does not advertise or sell products in Virginia. (Larco Aff. at ¶ 3.) It does not maintain an office or own property within Virginia. (*Id.*) It also has no officers, agents or employees operating or residing within Virginia. (*Id.*)

## II. STANDARD OF REVIEW

A motion made pursuant to Fed. R. Civ. P. 12(b)(2) challenges the court's exercise of personal jurisdiction over a defendant. "When a court's personal jurisdiction is properly challenged . . . the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citations omitted). If the existence of jurisdiction turns on disputed questions of fact, the court may resolve the jurisdictional challenge on the basis of a separate evidentiary hearing or at trial. *Combs*, 886 F.2d at 676; *see also Tire Eng'g & Distrib'n, LLC v. Shandong Linglong Rubber Co.*, __ F.3d __, 2012 WL 2036971, at *3 (4th Cir. June 6, 2012) ("[T]he court's factual findings are reviewed for clear error"). When, as here, the court is asked to decide personal jurisdiction without an evidentiary hearing, it may do so based solely on the motion papers, supporting legal memoranda and the relevant allegations of the complaint. *Mylan Labs*, 2 F.3d at 60. If the court proceeds in this fashion, "the plaintiff need prove only a *prima facie* case of personal jurisdiction," with the court

4

drawing "all reasonable inferences arising from the proof, and resolv[ing] all factual disputes, in the plaintiff's favor." *Id.* (citations omitted).

## III. DISCUSSION

To determine whether personal jurisdiction exists, a court typically engages in a two-step inquiry. *Tire Eng'n*, WL 2036971, at *4; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, it must determine whether the state's long-arm statute authorizes the exercise of personal jurisdiction. *Tire Eng'n*, WL 2036971, at *4. Second, it must assess whether such exercise of jurisdiction is constitutionally permissible. *Id.* However, the Fourth Circuit has determined that "Virginia's long-arm statute [Va. Code § 8.01-328.1] extends personal jurisdiction to the outer bounds of due process."[3] *Id.*; *see also Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). Thus, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'n.*, WL 2036971, at *4 (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009)).

Non-resident defendants may be subject to either specific or general jurisdiction. Specific jurisdiction exists if the plaintiff's claims arise out of the defendant's contacts with the forum state. *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 n.8, n.9 (1984). Alternatively, general jurisdiction depends on a defendant's contacts with the forum

---

[3] Among other arguments, Glex challenges whether English Boiler sufficiently alleged personal jurisdiction by referencing Va. Code § 8.01-328.1(A)(1) without pleading additional jurisdictional facts. The Court rejects this argument. The Supreme Court of Virginia has interpreted the phrase "transacting any business" within that subsection to mean "some purposeful activity" such that due process is satisfied. *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (Va. 1971) (citations omitted). Va. Code § 8.01-328.1(A)(1) has therefore been construed to extend Virginia's Long Arm statute to the constitutional limits. *Id.* (citations omitted). By referencing that statute, English Boiler alleged that constitutionally acceptable minimum contacts exist. Additional pleading on the issue was unnecessary.

5

state unrelated to the claims at issue. *Helicopteros Nacionales,* 466 U.S. at 414-15 n.8, n.9. To establish general jurisdiction, a non-resident defendant's activities in the state must be "continuous and systematic," a "more demanding showing" of minimum contacts than is required to establish specific jurisdiction. *Tire Eng'n,* WL 2036971, at *4; *see ESAB Group v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir. 1997). In this case, the Defendant's activity in Virginia is isolated to involvement in the contract at issue and three similar contracts with the Plaintiff spaced over the last nine years. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 3.) Such activity is not "continuous and systematic" enough to confer general jurisdiction and the Plaintiff does not argue otherwise. The Court will therefore limit its analysis to specific jurisdiction.

To evaluate whether "minimum contacts" exist such that the exercise of specific jurisdiction comports with due process, a court must consider: (1) the extent to which the defendant "purposefully availed" itself of the privilege of conducting activities in Virginia; (2) whether the plaintiff's claims arise out of such activities; and, (3) whether the exercise of personal jurisdiction is constitutionally reasonable. *Tire Eng'n,* WL 2036971, at *5; *Mitrano v. Hawes,* 377 F.3d 402, 407 (4th Cir. 2004). No bright-line numeric test exists, as a court must "do more than formulaically count contacts, instead [it should proceed by] taking into account the qualitative nature of each of the defendant's connections to the forum state." *Tire Eng'n,* WL 2036971, at *4. Indeed, the Fourth Circuit has held that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir. 1990) (internal quotes omitted) (alteration in original); *see Tire Eng'n,* WL 2036971, at *4.

In fact, a defendant need not be physically present in Virginia to engage in a transaction of business in the Commonwealth. *See, e.g., Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982). Nevertheless, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377 F.3d at 407 (quoting *ESAB Group, Inc.*, 126 F.3d at 625); *see also Tire Eng'n*, WL 2036971, at *4 ([C]asual or isolated contacts are insufficient to trigger an obligation to litigate in the [foreign] forum") (internal quotes omitted).

A.   **Purposeful Availment**

"The purposeful-availment test is flexible, and our analysis proceeds on a case-by-case basis." *Tire Eng'n*, WL 2036971, at *5. In *Tire Engineering*, the Fourth Circuit recently found personal jurisdiction over two foreign companies (Al Dobowi and Linglong) that conspired with a Virginia resident (Vance) to replicate patented tire designs. Al Dobowi purposefully availed itself of Virginia's laws by visiting Virginia to initiate the conspiracy, employing Vance and substantially corresponding with his Virginia office. *Id.* at *7. Even though Linglong did not employ Vance or send a representative to Virginia, the Court found personal jurisdiction proper, because Linglong extensively corresponded and collaborated with Vance on his work in Virginia, all the while knowing that their activity was furthering a conspiracy and that a resulting suit was therefore foreseeable. *Id.* at *8. The most dispositive factor for both defendants was that their activity amounted to "repeatedly reach[ing] into Virginia to transact business . . ., invoking the benefits and protections of Virginia Law." *Id.* at *7, *8 (citing *CFA Inst.* 551 F.3d at 295).

7

The Court's analysis in *Tire Engineering* focused on comparing two of its recent decisions — *CFA Institute*, 551 F.3d 285, and *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) — to "glean a basic outline of the doctrine" of personal jurisdiction. *Tire Eng'n*, WL 2036971, at *5. In *CFA Institute*, the Court found jurisdiction over an Indian financial analysis institute (ICFAI) sued by a similar Virginia institute (CFA). *CFA Inst.*, 551 F.3d at 295-97. The Fourth Circuit held that ICFAI purposely availed itself of Virginia's laws by initiating the relationship, twice sending representatives into Virginia and "correspond[ing] and collaborat[ing]" with CFA during the performance of a licensing agreement. *Id.* at 295. Jurisdiction was proper even though ICFAI had no other contacts with Virginia, the licensing agreement was executed in India and the agreement's performance and breach occurred largely outside Virginia. *Id.* at 288-89. The Court in *Tire Engineering* used *CFA Institute* to demonstrate activity that amounted to "repeatedly reach[ing] into Virginia to transact business . . ., invoking the benefits and protections of Virginia Law." *Tire Eng'n*, WL 2036971, at *7.

Conversely, the Fourth Circuit found jurisdiction lacking in *Consulting Engineer*. 561 F.3d 273. There, a Virginia company (CEC) sued a Colorado company (Structure Works) and an Indian company (Geometric) over a non-disclosure agreement formed in anticipation of cooperating on a project. The Court applied the "purposeful availment" analysis by determining the "quality and nature of the contacts" through seven "nonexclusive factors."[4] *Id.* at 279.

---

[4] These are: "[W]hether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs*, 561 F.3d at 278 (4th Cir. 2009) (citations omitted).

Among other reasons, jurisdiction did not exist over Structure Works, because it had never visited Virginia, it had not executed a formal agreement to perform the project, the contemplated project would have been performed in India and the alleged injury occurred in India. *Id.* at 280. For Geometric, these same factors were balanced against a Virginia choice of law provision. The Court nevertheless found jurisdiction improper, because Geometric did not initiate the relationship and did not communicate with CEC during the contract's performance. *Id.* at 281-82. Instead, their exchanges were limited to creating the non-disclosure agreement. *Id.* Essentially, the plaintiffs did not pursue business in Virginia and there was an "overpowering foreign nexus to the dispute." *Tire Eng'n*, WL 2036971, at *6.

Glex's activity in Virginia surpasses that of the defendants in *CFA Institute* and *Tire Engineer* and far exceeds that of the defendants in *Consulting Engineer*. Glex initiated negotiations by calling English Boiler's offices in Virginia — which it had done on three prior occasions.[5] (English aff. ¶¶ 4, 15.) The parties executed their contract in Virginia[6] and English

---

[5] *See CFA Inst.*, 551 F.3d at 293 n. 17 ("[p]ursuant to applicable precedent, we are entitled to accord special weight to the fact that it was [the plaintiff] that initiated contact with [the defendant] in Virginia") (citation omitted).

[6] Glex submitted an affidavit stating that "[t]he Purchase Order and Change Orders related to the Transaction were prepared and executed in Texas." However, this statement does not establish where the *contract* was finalized. (Larco Aff. at ¶ 6.) "A purchase order is generally an offer which may then be accepted or rejected by a seller." *Roanoke Cement Co., L.L.C. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005) (quoting *J.B. Moore Elec. Contractor, Inc. v. Westinghouse Elec. Supply Co.*, 273 S.E.2d 553, 556 (Va. 1981)) (internal quotation marks omitted). The record indicates that Glex believed the contract's formation depended upon English Boiler accepting "clarifications" to its Proposal: "[p]lease confirm the acceptance of these terms . . . [w]e can not (sic) commit until your confirmation." (E-mail from William Larco, Vice-President of GLEX, Inc. to John English, Vice-President of English Boiler & Tube, Inc. (Feb. 12th, 2010 2:29 PM) (English Aff. Ex. A.).) English Boiler accepted Glex's purchase order, thereby executing the contract, in Virginia. The Court therefore infers contract formation upon acceptance in Virginia, as it should construe "all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs*, 2 F.3d at 60 (citations omitted). Moreover, even if the forms dictated otherwise, the issue is not dispositive of

9

Boiler performed the contract in Virginia, utilizing Virginia labor and facilities for more than four months.[7] Glex actively communicated and collaborated during the performance of the contract, e-mailing altered specifications, twice sending a representative to Virginia to inspect and oversee the progress, issuing two change orders and all the while maintaining frequent contact through telephone and e-mail concerning the boilers' "design, fabrication, installation, startup, and/or repairs." (English Aff. at ¶¶ 7-13; Aff. of William Larco ("Larco Aff.") at ¶ 7.)

Glex solicited and corresponded with a company in Virginia, just as CFA did. It substantially collaborated on work performed in Virginia, just as Linglong did.[8] There is no "overpowering foreign nexus," *Tire Eng'n*, WL 2036971, at *6, like that found in *Consulting Engineer*; the contract was executed and carried out within Virginia. Personal jurisdiction will generally be found when a defendant solicits and collaborates in a contract performed within Virginia. *See, e.g. Hirschkop & Grad, P.C v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985) (finding jurisdiction over a defendant who retained a Virginia law firm, sent calls and correspondence into Virginia, and traveled to Virginia at least once to meet the plaintiff); *English & Smith*, 901 F.2d at 39 (4th Cir. 1990) (finding jurisdiction over a California attorney who sought out, hired, and corresponded with a Virginia attorney for work performed in Virginia).

---

jurisdiction; the contract in *CFA Institute* was not executed in Virginia, and yet the other contacts (which Glex shares) were found sufficient to confer jurisdiction anyway. 561 F.3d at 288.

[7] The February 15th e-mail from Larco to English implies a four month project: "[s]hipment of the two boilers will need to be in 16 weeks from today." (E-mail from William Larco, Vice-President of GLEX, Inc. to John English, Vice-President of English Boiler & Tube, Inc. (Feb. 15th, 2010 9:27 AM) (Exhibit B of English Affidavit).) However, change orders were issued on July 7th and 28th, indicating English continued to work on the project more than four months later. (Complaint ¶ 7.)

[8] Also, like Linglong, Glex could foresee the possibility of suit arising from its activity in Virginia. Glex repeatedly engaged a Virginia supplier in complex business — the creation of highly expensive and intricate machinery. Complexity and intricacy invite conflict over performance. *See infra*, p. 15.

10

Here, Glex purposefully availed itself of the protection of Virginia law by soliciting and collaborating in a contract executed and performed in Virginia.

Additional, ancillary factors favor finding jurisdiction. Glex ordered the boilers F.O.B. Richmond, accepting delivery in Virginia. (Compl. ¶ 6); *see Wheat, First Securities Inc. v. Longhorn Computer Leasing Corp.*, 1980 WL 143087 (Va. Cir. Ct. Feb. 26, 1980) (finding F.O.B. Richmond provisions "not sufficient contacts in themselves," but "when these facts are coupled with [the defendant's] other acts of purposeful participation in the formulation, and the execution, of the contract the constitutionally required 'minimum contacts' are established") (citations omitted). Also, the total cost of the contract exceeded one million dollars — indicating a substantial deal. (Compl. ¶ 7); *see In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 227 (6th Cir. 1972) ("[t]he making of a substantial business contract with a corporation based in another jurisdiction has been held to be adequate to satisfy the requirements of the 'purposeful' test") (citations omitted).

Glex contends that jurisdiction is improper because it does not advertise, sell, maintain an office, own property or have agents within Virginia. (Def.'s Mem. at 4.) However, it has never been that the contacts a party *does not* maintain in a forum determine whether an exercise of personal jurisdiction is appropriate, but rather the quality of the contacts that the party *does* establish. *See, e.g., Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987); *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957).

Moreover, the cases cited by Glex are distinguishable. In *Danville Plywood*, the defendant did not initiate contact, the contract was executed outside Virginia and it concerned a simple sale of goods. *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 238 S.E.2d 800, 801 (Va. 1977). In *Diamond Healthcare*, the defendant also did not initiate contact, the contract

11

was performed in Ohio and there was not significant communication between the parties during its performance. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451, 452 (4th Cir. 2000). In *Viers*, the defendant did initiate contact, but the resulting contract was executed, performed and breached outside of Virginia. *Viers v. Mounts*, 466 F. Supp. 187, 191 (W.D. Va. 1979). *Ellicot Machine* had a similar "overpowering foreign nexus to the dispute," *Tire Eng'n*, WL 2036971, at *6, because the contract it concerned was executed and performed in Australia. *Ellicott Machine Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 476 (4th Cir. 1993).

Glex has presented cases in which defendants share one or two of its contacts with Virginia, but not all of them. That each of Glex's contacts with Virginia would be insufficient to confer jurisdiction in isolation does nothing to refute their aggregate effect. Glex had more contacts with Virginia than any of the defendants in the cases that it cites. Simply put, Glex purposefully availed itself of the protection of Virginia law by soliciting and collaborating in a contract executed and performed in Virginia, and in doing so, it subjected itself to the reach of this Court.

## B. Relationship Between Contacts and Dispute

The second prong of the test is easily satisfied "[w]here [the defendant's] activity in the forum state is 'the genesis of [the] dispute.'" *Tire Eng'n*, WL 2036971, at *6 (alteration added) (quoting *CFA Institute*, 551 F.3d at 295). "A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* Glex's only alleged contacts with Virginia involve its dealings with English Boiler, wherein Glex solicited English Boiler to build boilers and the resulting contract dictated the manufacture and sale of

12

those boilers. (English Aff. at ¶¶ 4-11.) This very contract, and Glex's correspondence and collaboration concerning it, is the "genesis" of English Boiler's claim for breach. (Compl. at ¶12.) The claim thus directly "arise[s] out of" and "relate[s] to" Glex's contacts with Virginia. *Burger King*, 471 U.S. at 473. Accordingly, the second prong of the analysis is satisfied.

## C.   Exercise of Personal Jurisdiction is Constitutionally Reasonable

The third and final factor of the "minimum contacts" test requires the Court to ask whether its exercise of jurisdiction is "constitutionally reasonable." *Mitrano*, 377 F.3d at 407. The touchstone of this "somewhat nebulous concept," *Christian Sci. Bd. of Dirs.*, 259 F.3d at 218, is whether the exercise of jurisdiction over a defendant comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The standard has been explained as follows:

> In determining whether jurisdiction is constitutionally reasonable, we may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."

*Christian Sci. Bd. of Dirs.*, 259 F.3d at 218 (quoting *Burger King*, 471 U.S. at 477).

Additionally, "the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there." *CFA Inst.*, 551 F.3d at 296; *see also Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) (explaining that defendant's contacts with foreign sovereign created "predictable risks").

The first of these factors weighs in favor of the Defendant. Certainly, forcing it to adjudicate this dispute in Virginia will be inconvenient. Glex does not have any offices, property, employees or agents in Virginia. (Larco Aff. at ¶ 3.) However, this is not dispositive. *Tire Eng'n*, WL 2036971, at *7. Glex's burden is lessened by the size and breadth of its

13

business. It regularly deals in products costing more than a million dollars, contracts with suppliers for complex machinery across the country, and sells and installs its products across international borders (in the United States and Mexico). (English Aff. at ¶ 15.) The resources behind such an operation can reasonably be expected to support litigation in the state of one of its suppliers.

The plaintiff's interest in a convenient forum also weighs against Glex. English Boiler was solicited by an out-of-state corporation and it has a valid interest in adjudicating disputes from its headquarters in Virginia, where it negotiated, executed and performed the contract at issue. (English Aff. at ¶¶ 4-11.) Additionally, other than responding to Glex's advances, there is no indicia that English Boiler has done anything to subject itself to jurisdiction elsewhere. Thus, there is strong evidence supporting jurisdiction over Glex in Virginia, but little evidence suggesting jurisdiction over English Boiler in a different forum. Considerations of judicial economy make it reasonable to exercise personal jurisdiction over Glex, because Virginia appears to be the most suitable forum.

Glex incorrectly contends that Virginia's interest in adjudication is minimal, because Glex has "very little contact" with the state. (Def.'s Mem. at 7.) However, Virginia's interest lies not in policing out-of-state companies who come into contact with the Commonwealth, but rather in providing a convenient forum for native corporations to resolve disputes with foreign entities. *CFA Inst.*, 551 F.3d at 296-97 ("Virginia has a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law"). Virginia has an interest in providing its corporations with a mode of redress against businesses that have purposefully availed themselves of Virginia laws. Virginia's

interest here is heightened, because its law will likely control; there is no forum selection clause (Def.'s Mem. at 5,) and the contract was, presumably, executed in Virginia, *see supra*, at n. 3.

Finally, Glex could reasonably anticipate being haled into court in Virginia. Before this contract, Glex contacted and hired English Boiler on at least three other projects: in 2003, 2005 and 2007. (English Aff. ¶ 15.) Assuming that those contracts were similar to the one at issue, Glex has repeatedly turned to a Virginia supplier to provide highly expensive and intricate custom machinery. Engaging in business of such complexity risks suit arising from conflict in its performance. Repeatedly choosing to reach out to a foreign forum for such business creates an increasing likelihood of suit within that forum. Glex's choice to continually use a Virginia supplier renders jurisdiction in Virginia reasonable.[9]

In sum, Glex "purposefully availed" itself of the privilege of conducting activities in Virginia by soliciting and collaborating in a contract executed and performed within Virginia. Those activities "relate to" and "arise under" the breach of contract claim and it is constitutionally reasonable for this Court to exercise jurisdiction over the defendant.

### III. CONCLUSION

For the reasons discussed herein, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 6) will be DENIED.

/s/ _____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: June 12, 2012

---

[9] *See CFA Inst.*, 551 F.3d at 293 n. 17 ("[p]ursuant to applicable precedent, we are entitled to accord special weight to the fact that it was [the plaintiff] that initiated contact with [the defendant] in Virginia") (citation omitted).